**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
MINNEAPOLIS DIVISION**

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION,    ) | |
| ) | |
| Plaintiff,    ) | |
| ) | Case No. _____ |
| v.    ) | |
| ) | |
| TRUMAN 2016 SC6, LLC    ) | |
| ) | |
| Defendant.    ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff U.S. Bank National Association ("Plaintiff" or "U.S. Bank") files this Complaint for Declaratory Judgment against Defendant Truman 2016 SC6, LLC ("Truman" or "Defendant") and states the following based on knowledge as to itself and upon information and belief as to all other matters in support thereof:

## NATURE OF ACTION

1. This is an action seeking a declaration regarding the parties' rights and obligations under the November 2, 2018 Asset Sale Agreement by and between U.S. Bank, as Seller, and Truman, as Buyer (the "ASA").[1] A true and correct copy of the ASA is attached hereto as Exhibit A. Specifically, U.S. Bank seeks a declaration that it has not breached the representations and warranties contained at Section 6.2 of the ASA as to twelve loans (the "Disputed Loans"),[2] and is

---

[1] This Complaint expressly incorporates the ASA by reference. Due to a confidentiality provision in the ASA, which applies to the "terms or existence" of the ASA and the "transactions contemplated" thereunder, U.S. Bank has redacted certain portions of this Complaint and redacted Exhibit A in its entirety. U.S. Bank will move to file an unredacted version of the Complaint under seal.

[2] Those loans are Loan ID Nos. XXXXXX3927, XXXXXX4524, XXXXXX1376, XXXXXX8417, XXXXXX6280, XXXXXX5382, XXXXXX9959, XXXXXX0997,

therefore not required to repurchase the Disputed Loans from Truman under Section 23 of the ASA.

2. In November 2018, Truman purchased several hundred mortgage loans from U.S. Bank pursuant to the ASA. As part of the loan sale process, Truman was permitted to, and did in fact, perform loan-level due diligence of the loans prior to the closing of the transaction contemplated by the ASA (the "Closing").

3. While performing its due diligence prior to Closing, Truman identified certain loans with alleged statute of limitations issues, including the Disputed Loans.[3] Truman raised these alleged statute of limitations issues with U.S. Bank and demanded that U.S. Bank reduce the purchase price of seven of the Disputed Loans. After U.S. Bank agreed to Truman's price reductions, Truman agreed to purchase all twelve Disputed Loans (in addition to more than 350 other loans that were not in dispute), and the parties closed on the transaction.

4. Under Section 6.2 of the ASA, U.S. Bank made certain representations and warranties regarding the loans. Those representations and warranties, however, were subject to an important qualification: "Except as otherwise disclosed in the Review File or in publicly available records."

5. Specifically, Section 6.2 of the ASA begins:

**6.2. Representations and Warranties by Seller as to the Loan(s).** *Except as otherwise disclosed in the Review File or in publicly available records*, the Seller hereby represents and warrants that, as to the Loan(s), the following representations and warranties are true and correct in all material respects as of the date hereof. (emphasis added)

---

XXXXXX5005, XXXXXX7369, XXXXXX9479, and XXXXXX4843. (The first six numbers in the Loan ID have been removed).

[3] Truman identified issues with certain other loans that are not part of the present dispute.

6.      Beginning in May 2019, Truman began to demand that U.S. Bank repurchase the Disputed Loans with alleged statute of limitations issues for nearly $3 million, alleging that U.S. Bank had breached certain representations and warranties in Sections 6.2.6, 6.2.7 and 6.2.8 of the ASA because the Disputed Loans allegedly (i) did not have a first lien position, (ii) lacked enforceability and (iii) were barred by the applicable statute of limitations.

7.      U.S. Bank declined to repurchase the Disputed Loans.  U.S. Bank explained to Truman that any such issues with the Disputed Loans were "disclosed in the Review File or in publicly available records."  More specifically, U.S. Bank explained that Truman had actual knowledge of the alleged statute of limitations issues prior to Closing.  Indeed, Truman had expressly brought to U.S. Bank's attention the alleged issues with the Disputed Loans prior to Closing, demanded a reduction in price on seven of the Disputed Loans, and then agreed to purchase all twelve Disputed Loans.

8.      Furthermore, data sufficient to put Truman on notice of the alleged statute of limitations issues, including data related to the delinquency of the loans and the prior commencement of foreclosure actions, was available in the Review File that Truman received as part of the due diligence process.  Additionally, because foreclosure in the State of New York (where the mortgaged properties are situated) is effectuated only by judicial process, Truman had access to publicly available records about the status of the foreclosure proceedings for the Disputed Loans—court records as well as real property records  Accordingly, the alleged statute of limitations issues were "otherwise disclosed in the Review File or in publicly available records," and therefore U.S. Bank did not breach any representations and warranties in Section 6.2 of the ASA with respect to the twelve Disputed Loans.

9.      In addition to the express qualification on the representations and warranties, Truman waived its right to enforce those representations and warranties when it voluntarily chose to purchase the Disputed Loans notwithstanding its actual knowledge of any alleged statute of limitations issues.

10.      Further, pursuant to the Limitation of Damages clause in Section 23 of the ASA,[4] Truman was required to provide notice of any alleged breach of U.S. Bank's representations and warranties on or before the earlier of (i) 30 days after the discovery of such breach or (ii) 180 days after the Closing Date of November 19, 2018.  Truman had actual knowledge of the alleged breaches more than 30 days prior to sending its May 15, 2019 demand letter notifying U.S. Bank for the first time that U.S. Bank had purportedly breached the representations and warranties. Consequently, Truman's notice was untimely and Truman has waived its right to demand repurchase of the Disputed Loans.[5]

11.      Nevertheless, Truman has continued to demand that U.S. Bank repurchase the Disputed Loans, has hired outside litigation counsel and has threatened to bring legal action on multiple occasions.

12.      In April 2020, outside litigation counsel for Truman sent U.S. Bank a letter "as a last resort to resolve this breach before Truman takes formal legal action against U.S. Bank for breach of the [ASA]."  Truman reiterated that threat as recently as mid-May 2020.

13.      To finally resolve this live and immediate dispute over the ASA, U.S. Bank now brings this declaratory judgment action.

---

[4] Section 6 of the ASA erroneously refers to Section 21 instead of Section 23 as applying to (and limiting) U.S. Bank's representations and warranties.

[5] In addition, pursuant to Sections 16 and 23 of the ASA, Truman had to assert any claim for any alleged breach of representations or warranties within 180 days after the Closing Date of November 19, 2018.  That period has run, and Truman did not assert any claim.

<div align="center">**JURISDICTION AND VENUE**</div>

14.     This Court has jurisdiction over the subject matter of this action pursuant to diversity jurisdiction, 28 U.S.C. § 1332, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  This action is between citizens of different States, the amount in controversy exceeds $75,000 as Truman has demanded that U.S Bank repurchase the Disputed Loans for more than $2 million, and the action involves a case of actual, immediate, and justiciable controversy between U.S. Bank and Truman.

15.     The Court has specific personal jurisdiction over Truman because, in the ASA, Truman consented to jurisdiction in the federal or state courts situated in the city or county of U.S. Bank's principal place of business, namely Minneapolis, Minnesota.  *See* Exhibit A at ¶ 17.  In addition, Truman has engaged in sufficient minimum contacts in Minnesota and has intentionally availed itself of the benefits of doing business in Minnesota by, among other things, negotiating and entering into the ASA with U.S. Bank.

16.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this District.  Venue is also proper because Truman has consented to venue in this District.

<div align="center">**PARTIES**</div>

17.     Plaintiff U.S. Bank is a national banking association organized under the National Bank Act, and is deemed to be a citizen of the State designated in its articles of association as its main office, which is Ohio.

18.     Defendant Truman is a limited liability company organized under the laws of the State of Delaware.  On information and belief, none of Truman's members are citizens of the State of Ohio.

## FACTUAL BACKGROUND

19.     In or around September 2018, U.S. Bank worked with a loan sale advisor to sell a portfolio of loans.  Potential bidders were given access to certain loan-level data regarding the loans included in the sale.  Truman was one of the potential bidders, and reviewed the loan-level data prior to submitting its bid.

20.     On or about October 10, 2018, Truman was declared the winning bidder for certain pools of loans included in the sale.  Thereafter, and prior to Closing, Truman was provided additional, comprehensive information about the loans included in the sale.  Accordingly, Truman was able to, and did, conduct due diligence of the actual loan file information for these loans and was not limited to reviewing just the data that was provided prior to the date for submission of the bids.  The actual loan file information was contained in the Review File, as that term is defined in the ASA.

21.     Throughout November 2018, Truman provided its conclusions to U.S. Bank regarding its due diligence of the loans, and separately demanded that U.S. Bank agree to price reductions on certain loans.

22.     In particular, Truman identified the twelve Disputed Loans in its due diligence report that were subject to potential enforceability problems based on the expiration of the statute of limitations:



US BANK [redacted]
Due Diligence Issue Tracking

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| FINAL | 362 | | 149,350,923 | | | | | | | |
| PREBID | 369 | | 150,535,540 | | | | | | | |

| LOAN ID | BWR NAME | STA | 10.31 TOT UPB | 10.31 STATUS | CATEGORY | TRUMAN ISSUE | TRUMAN REQUEST | TRUMAN REVIEW | 11.15.18 update | RESOLUTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 3927 | | NY | 763,118 | FC | NY SOL | SOL is an issue: The | REPRICE - SOL BUY AT 100% | REPRICE - SOL BUY AT 100% | REPRICE - SOL BUY. | REPRICE |
| 9959 | | NY | 566,485 | FC | NY SOL | SOL is an issue - the the | REPRICE - SOL BUY AT 10% | | | REPRICE |
| 4524 | | NY | 495,715 | FC | NY SOL | The SOL: is an issue based | REPRICE - SOL BUY AT 10% | | | REPRICE |
| 0997 | | NY | 657,335 | FC | NY SOL | SOL is an issue - the SOL | REPRICE - SOL BUY AT 10% | | | REPRICE |
| 5005 | | NY | 710,989 | FC | NY SOL | Potential issues as the | REPRICE - SOL BUY AT 10% | | | REPRICE |
| 7369 | | NY | 569,219 | FC | NY SOL | The SOL: is an issue based | REPRICE - SOL BUY AT 10% | | | REPRICE |
| 9479 | | NY | 381,771 | FC | NY SOL | The SOL is an issue - it | REPRICE - SOL BUY AT 10% | | | REPRICE |
| 4843 | | NY | 463,183 | FC | NY SOL | SOL - OK TO BUY | | SOL - OK TO BUY | SOL - OK TO BUY | CLEAR |
| 1376 | | NY | 461,325 | FC | NY SOL | SOL - OK TO BUY | | SOL - OK TO BUY | SOL - OK TO BUY | CLEAR |
| 8417 | | NY | 286,765 | FC | NY SOL | SOL - OK TO BUY | | SOL - OK TO BUY | SOL - OK TO BUY | CLEAR |
| 6280 | | NY | 548,395 | FC | NY SOL | SOL - OK TO BUY | | SOL - OK TO BUY | SOL - OK TO BUY | CLEAR |
| 5382 | | NY | 220,299 | FC | NY SOL | | | SOL - OK TO BUY | | CLEAR |

23. Truman's own November 15, 2018 tracking list, excerpted above, clearly identifies all Disputed Loans as "NY SOL." The report further states as the "Resolution" that seven loans would "REPRICE" and the other five loans were "CLEAR."

24. Furthermore, data sufficient to put Truman on notice of the alleged statute of limitations issues was in both the Review File and in publicly available records.

25. U.S. Bank agreed to Truman's demand to reduce the price of the first seven loans in the excerpt of the tracking list. The parties did not reprice the other five Disputed Loans.

26. On or about November 19, 2018, U.S. Bank and Truman closed on the ASA, and Truman purchased the Disputed Loans, and many other loans.

**The November 2, 2018 Asset Sale Agreement**

27. The ASA provides all material terms for the sale of the loans.

28. In Section 5 of the ASA, Truman provided representations and warranties of the Buyer. In Section 5.5, Truman represented that its "bid and decision to purchase the Loan(s) is based upon its own comprehensive review and independent expert evaluation and analysis of the Review File and other materials deemed relevant by the Buyer and its agents." Truman also represented that it "has made such independent investigation as the Buyer deems to be warranted into the nature, title, attachment, perfection, *priority*, validity, *enforceability*, *collectability* and

7

value of the Loan(s), the title condition and value of any collateral securing the Loan(s), the market conditions and other characteristics of the places where any such collateral is located, and all other facts it deems material to the purchase of the Loan(s)."  (emphasis added).

29.     In Section 5.7, Truman represented that it was a "sophisticated investor" and that it had "not relied upon any oral or written information from the Seller, [the loan advisor], or any of their respective employees, agents, attorneys or representatives, other than the limited representations and warranties of the Seller contained herein."

30.     In Section 6 of the ASA, U.S. Bank provided Seller's representations and warranties.  In Section 6.2, U.S. Bank provided representations and warranties by Seller as to the loans.

31.     As stated in Section 6.2, all of the representations and warranties as to the loans were made by U.S. Bank subject to the following qualification: "[e]xcept as otherwise disclosed in the Review File or in publicly available records."

32.     Section 23 of the ASA is a "Limitation of Damages" clause.  Section 23 requires Truman to provide U.S. Bank with written notice of any alleged breach of U.S. Bank's representations and warranties on or before the earlier of: (i) 30 days after the discovery of such breach; or (ii) 180 days after the Closing Date (which is the date U.S. Bank's representations and warranties expire, as specified in Section 16).

33.     Section 23 further precludes Truman from asserting any claim for breach of U.S. Bank's representations and warranties under Section 6 (except for any representations set forth in Section 6.2.17, inapplicable here) unless such a claim is brought within 180 days after the Closing Date of November 19, 2018.  Section 16 similarly provides that the representations and warranties set forth in Sections 6.1 and 6.2 of the ASA "shall expire one hundred eighty (180) days after the

Closing Date, after which time no claim for breach of the Seller's representations or warranties may be made."

<div align="center">**The Parties' Dispute Arising Under the ASA**</div>

34.     In a letter dated May 15, 2019, Truman requested that U.S. Bank repurchase the Disputed Loans because the Disputed Loans breached representations and warranties contained in Section 6 of the ASA.  The Disputed Loans were identified in Truman's due diligence reporting originally provided to U.S. Bank in November 2018.  The basis for Truman's repurchase demand was that Truman had concluded that no first priority liens existed on the properties due to the expiration of the applicable statutes of limitations.

35.     Truman's May 15, 2019 letter was the first notice that Truman had provided U.S. Bank of the alleged breaches of the representations and warranties for the Disputed Loans. However, because Truman had discovered these alleged breaches more than 30 days prior to sending the May 15, 2019 letter, and was in fact aware of these alleged breaches at and immediately after the Closing Date, Truman's May 15, 2019 letter was untimely under Section 23 of the ASA.

36.     In addition, three days later (on May 18, 2019), the 180-day period for asserting claims for alleged breaches of representations and warranties expired.  Under Sections 16 and 23 of the ASA, Truman could "not assert any claim for any breach of any [U.S. Bank] representations and warranties" more than 180 days after the Closing Date, which was November 19, 2018. Truman did not assert any claim on or prior to May 18, 2019.

37.     Then, on June 2, 2019, U.S. Bank responded to Truman's May 15, 2019 letter, attaching title reports showing that the mortgages sold to Truman were open first lien mortgages against the underlying properties.  Accordingly, U.S. Bank informed Truman that it had "not

violated section 6.2.6 of the Asset Sale Agreement." In addition, and in any event, U.S. Bank reminded Truman that during Truman's due diligence review, Truman had discovered that there may be issues with the statute of limitations on the loans for which it was demanding repayment. U.S. Bank explained that "Truman was aware of these issues, purchased the loans knowing these issues existed and . . . many were severely discounted at sale." U.S. Bank therefore declined to repurchase the Disputed Loans.

38. U.S. Bank sent additional correspondence to Truman on February 19, 2020, again acknowledging the repurchase request, but declining to repurchase the Disputed Loans because there was no breach of any representation or warranty.

39. As explained in U.S. Bank's February 19, 2020 letter:

[T]o the extent Truman's underlying concern is the expiration of the applicable statutes of limitations on these loans, that fact is not sufficient basis for repurchase under the ASA because U.S. Bank disclosed—and Truman had actual knowledge of—the statute of limitations deficiencies of these loans prior to the execution of the ASA. Under Section 6.2 of the ASA (Representations and Warranties by Seller as to the Loan(s)), U.S. Bank's representations and warranties regarding the loans were made subject to the following qualification: "*Except as* otherwise disclosed in the Review File or in publicly available records." During Truman's due diligence review in 2018, Truman became aware that some of the loans in the asset pool had statute of limitations deficiencies. In fact, after Truman concluded its due diligence on November 16, 2018, U.S. Bank agreed to a pricing adjustment of the asset pool to reflect deficiencies Truman identified in its due diligence review. . . .

U.S. Bank is not obligated to repurchase the loans identified by Truman, and therefore we will not agree to the repurchase request.[6]

40. On April 8, 2020, Truman, through its litigation counsel, wrote U.S. Bank to again demand repurchase of certain of the Disputed Loans which were purportedly: "(i) not first liens; (ii) lack enforceability; and (iii) are barred by the applicable statute of limitations." The Disputed

---

[6] As of February 2020, Truman focused its discussion on six of the twelve Disputed Loans, all of which had been included on Truman's November 15, 2018 tracking list with noted "SOL" issues, but had not formally withdrawn its demand to repurchase all twelve Disputed Loans.

Loans Truman was demanding that U.S. Bank repurchase were identified in Truman's due diligence reporting originally provided to U.S. Bank in November 2018.

41. Truman noted that its April 8, 2020 letter "serves to put U.S. Bank on additional notice of its breach of the Agreements and as a last effort to resolve this breach before Truman takes formal legal action against U.S. Bank for breach of the Agreements."

42. On April 28, 2020, U.S. Bank's transaction counsel wrote to Truman's counsel by email and reiterated that it was "unwilling to agree to repurchase the loans because Truman's claims regarding the six statute-of-limitation ('SOL') loans are not supported by the facts."

43. As explained in the April 28, 2020 email:

We have attached two versions of Truman's due diligence reporting, both of which were originally provided to U.S. Bank by Truman in November of 2018. Please note that although both attachments are filtered for the six loans at issue, all of the data came directly from Truman the week prior to settlement. The Truman Issue Tracking List dated November 13 includes comments indicating that Truman was researching four of the SOL loans, had cleared one SOL loan to buy, and was repricing one SOL loan. The Truman Issue Tracking List dated November 15 clearly identifies all six loans as "SOL," and includes updated comments indicating that four of the SOL loans were "OK TO BUY," and that the remaining two loans were to be price adjusted. Because Truman was aware of the SOL issue, the parties did in fact negotiate a pricing adjustment.

The representations of U.S. Bank under Section 6.2 of the ASA, including without limitation under Subsection 6.2.8 of the ASA, are qualified "Except as otherwise disclosed in the Review File or in publicly available records". As noted above, Truman was aware of the SOL issue from the Review File (as defined in the ASA). Furthermore, the recording date and the date of any maturity date stated in any of the mortgages securing the six SOL loans were in both the Review File and in publicly available records (county recording offices), as is the limitations statute itself (maintained by the New York legislature). Accordingly, the representation remains true and unbreached, and there is no valid warranty claim under Subsection 6.2.8 of the ASA with respect to the SOL issue.

44. Truman continues to reiterate its demand that U.S. Bank is required to repurchase (at least) six of the Disputed Loans pursuant to Section 23 of the ASA.

11

45.     On May 18, 2020, Truman indicated that it "would like a resolution on this but if we cannot come to an acceptable agreement [Truman] will proceed with litigation."

46.     U.S. Bank now brings the present action to finally resolve the issue of whether U.S. Bank is in breach of the representations and warranties under the ASA and thus whether U.S. Bank is required to repurchase the Disputed Loans under the ASA.

### FIRST CAUSE OF ACTION
### (ACTION FOR DECLARATORY RELIEF)

47.     U.S. Bank repeats and realleges the allegations of the previous paragraphs of the Complaint as if fully restated herein.

48.     There exists a dispute under the ASA as to whether U.S. Bank must repurchase the Disputed Loans on the grounds that those loans are: (i) not first liens; (ii) lack enforceability; and (iii) are barred by the applicable statute of limitations, in breach of the representations and warranties by Seller in Sections 6.2.6, 6.2.7 and 6.2.8.

49.     This Court may declare the rights and other legal relations of any interested party seeking such a declaration in a case of actual controversy.

50.     U.S. Bank's representations and warranties by Seller in Section 6.2 were made subject to the following qualification: "Except as otherwise disclosed in the Review File or in publicly available records."

51.     During Truman's due diligence review in 2018, Truman became aware that some of the loans in the pool may have statute of limitations issues.

52.     Specifically, prior to Closing, Truman identified alleged statute of limitations issues with respect to the twelve Disputed Loans.

53.     After Truman concluded its due diligence in November 2018, U.S. Bank agreed to Truman's demand to reduce the purchase price of seven of the twelve Disputed Loans identified by Truman.

54.     Data sufficient to put Truman on notice of the alleged statute of limitations issues was also available in both the Review File and in publicly available records.

55.     Furthermore, Truman had full and ongoing knowledge of these alleged breaches as a result of the due diligence it performed and thus was aware of and had discovered the alleged breaches immediately after Closing on November 19, 2018.  As such, the notice provided by Truman on May 15, 2019 was untimely under Section 23 of the ASA.

56.     Accordingly, U.S. Bank requests that this Court declare that it is not in breach of the representations and warranties by Seller in Section 6.2 of the ASA, or any other part of the ASA, and U.S. Bank is not required by Section 23 to repurchase the Disputed Loans or pay any alleged actual damages purportedly caused by a breach of the representations and warranties.

57.     In addition, or in the alternative, U.S. Bank requests that this Court declare that:

(i)     Truman did not provide timely notice of any alleged breach of U.S. Bank's representations and warranties pursuant to Section 23 of the ASA, and therefore cannot assert a valid claim for either: (a) breach of any of U.S. Bank's representations or warranties set forth in Section 6 of the ASA or (b) U.S. Bank's declination of Truman's demand to repurchase the Disputed Loans or pay alleged damages; and

(ii)    Truman did not assert any claim for breach of U.S. Bank's representations and warranties within 180 days after the Closing Date, as required by Sections 16 and 23 of the ASA, and therefore cannot assert a valid claim for any alleged breach of the representations and warranties.

<div align="center">***</div>

WHEREFORE, U.S. BANK prays that:

1. It be issued a declaration from this Court as set forth above;

2. It be awarded reasonable expenses and attorneys' fees; and

3. It be awarded such further and other relief as this Court deems just and appropriate.

Dated: June 19, 2020        Respectfully submitted,

<div style="margin-left:40%">

/s/ Raechel J. Bimmerle
Raechel J. Bimmerle (Minnesota Bar No. 0400466)
Christopher A. Riley (*pro hac vice pending*)
Jamie S. George (*pro hac vice pending*)

ALSTON & BIRD LLP
One Atlantic Center
1201 W. Peachtree Street
Atlanta, Georgia 30309-3424
404-881-7000 (telephone)
404-881-7777 (facsimile)
rae.bimmerle@alston.com
chris.riley@alston.com
jamie.george@alston.com

</div>